UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| STEVE WESLEY CULVER and CASSIE CHARLENE CULVER,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED COMMERCE CENTERS, INC., NEW WORLD INTERNATIONAL, INC., and NATIONAL AUTO PARTS, INC.,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§    No. 3:16-cv-01055-M |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion to Dismiss for Failure to State a Claim [ECF No. 10]. For the reasons stated below, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

**I.    BACKGROUND**

On April 19, 2016, Plaintiffs Steve Wesley Culver and his wife, Cassie Charlene Culver, filed suit against Mr. Culver's former employer, United Commerce Centers, Inc. ("UCC"), as well as the sponsors of their medical insurance plan, New World International, Inc. ("NWI"), and National Auto Parts, Inc. ("NAP"). In May 2013, Steve Culver developed Hepatitis C and cirrhosis of the liver, which required substantial treatment. The parties agree that over $300,000 was paid in medical expenses for Mr. Culver over the course of two years. According to Plaintiffs' First Amended Complaint [ECF No. 7], UCC terminated Mr. Culver's employment so it could stop paying for his medical expenses under the medical insurance plan; UCC claims it terminated him for theft. Mr. Culver further alleges he was illegally denied continuing medical coverage and denies UCC's allegation that he was terminated for theft. Plaintiffs also claim that

1

Mrs. Culver was not given timely notice of her right to elect continuing coverage under the medical insurance plan, and that UCC forced Mr. Culver into a separation agreement releasing all claims by him. Plaintiffs sue for slander, duress, and violations of the Employee Retirement Income Security Act ("ERISA"), the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), and the Age Discrimination in Employment Act ("ADEA"). Defendants have filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6).

## II.     LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleading standard in Rule 8 does not require "detailed factual allegations," but it does demand more than an unadorned accusation devoid of factual support. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). While a court must accept all of the plaintiff's allegations as true, it is not bound to accept as true "a legal conclusion couched as a factual allegation." *Id.* at 678–79 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Twombly,* 550 U.S. at 570. Where the facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the pleader is plausibly entitled to relief. Fed. R. Civ. P. 8(a)(2); *Iqbal,* 556 U.S. at 678–79. The Court may consider documents attached to or incorporated in the complaint in deciding a motion to dismiss. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

### III.     ANALYSIS

#### A.  ERISA CLAIM

Plaintiffs' First Amended Complaint sufficiently alleges facts to state a claim under ERISA.  The first cause of action alleges that UCC violated § 510 of ERISA, which provides: "It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, … or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan."[1]

An employee bringing a § 510 ERISA claim must show: prohibited adverse action by the employer, taken for the purpose of interfering with any right to which the employee is or may become entitled to under the plan.  *Bodine v. Emp. Cas. Co.*, 352 F.3d 245, 250 (5th Cir. 2003).  A violation of § 510 requires a specific intent to discriminate.  *Matassarin v. Lynch*, 174 F.3d 549, 569 (5th Cir. 1999).

Plaintiffs' First Amended Complaint describes facts that, if proven, would be sufficient to make a *prima facie* case that Mr. Culver was terminated in order to interfere with his right to continued medical coverage.  He alleges that beginning in July 2015, after paying substantial amounts attributable to his medical condition, UCC was unwilling to continue to pay such medical expenses.  Mr. Culver alleges that UCC, NWI, and NAP met with UCC's insurance broker to discuss the medical insurance plan, and that they asked questions about Mr. Culver's medical condition and treatment, and inquired how they could obtain reimbursement for medical expenses the plan had paid on his behalf.  The insurance broker allegedly told Defendants that

---

[1] Section 510 of ERISA is codified at 29 U.S.C. § 1140.

3

the questions about Mr. Culver were improper, and Mr. Culver claims he was then terminated and deprived of continuing medical coverage.  First Am. Compl. ¶ 8.

In a motion to dismiss, the Court accepts all of a plaintiff's well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.  *Martin K. Eby Constr. Co. v. Dal. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004).  Here, Mr. Culver has sufficiently pleaded a prohibited adverse action by his employer to interfere with his right to continuing medical coverage.  Plaintiffs' allegations about a meeting between Defendants and UCC's insurance broker support Plaintiffs' claim that the purpose of his termination was to end his medical benefits.  The meeting also supports the contention that UCC had a specific intent to discriminate against Mr. Culver, as required by § 510 of ERISA.  Therefore, Plaintiffs have sufficiently pleaded that UCC violated 29 U.S.C. § 1140, and Defendants' Motion to Dismiss Plaintiffs' ERISA claim, along with court costs and attorney's fees, thus is **DENIED**.[2]

With respect to Mr. Culver's claims under ERISA for reinstatement, back pay, front pay, and prejudgment interest, a successful plaintiff may only recover "appropriate equitable relief" under ERISA.  29 U.S.C. § 1132(a)(3).  The Supreme Court has interpreted "appropriate equitable relief" to include "those categories of relief that, traditionally speaking (*i.e.*, prior to the merger of law and equity) were *typically* available in equity."  *CIGNA Corp. v. Amara*, 563 U.S. 421, 439 (2011) (citing *Sereboff v. Mid Atlantic Medical Services,* 547 U.S. 356, 361) (2006)).  Neither the Supreme Court nor the Fifth Circuit have addressed whether or not reinstatement is an equitable remedy.  However, a number of courts that have decided the issue have concluded that reinstatement is a form of equitable relief.[3]

---

[2] If Plaintiffs prevail on their ERISA claim, attorney's fees and court costs could be recovered under 29 U.S.C. § 1132(g)(1).

[3] *Eichorn v. AT&T Corp.*, 484 F.3d 644, 656 (3d Cir. 2007); *Schwartz v. Gregori*, 45 F.3d 1017, 1023 (6th Cir. 1995); *Sorensen v. FedEx Kinko's Office & Print Servs., Inc*., No. CIV.A. SA06CA416-FB, 2006 WL 3779783, at

The Supreme Court has left open the possibility that equitable remedies under ERISA include those available under Title VII, such as back pay and front pay. *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 218 n.4 (2002).  Monetary relief that is incidental to or intertwined with injunctive relief may be equitable. *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 571 (1990).  Several courts have held that back and front pay are forms of equitable relief, while others have treated them as equitable only where a plaintiff also seeks reinstatement.[4]

Here, Mr. Culver's request for back pay, front pay, and prejudgment interest could be incidental to and intertwined with his request for reinstatement.  The Court therefore **DENIES** Defendants' motion as to Plaintiffs' back pay, front pay, and prejudgment interest claims under ERISA.

### B.  COBRA CLAIMS

Plaintiffs' First Amended Complaint alleges facts sufficient to support their claims under COBRA.  Plaintiffs make three COBRA claims: first, that Defendants violated COBRA by denying Mr. Culver continuing medical coverage after December 31, 2015, despite his timely election to continue coverage and his making timely payments; second, that Defendants violated

---

*3 (W.D. Tex. Oct. 19, 2006); *Janda v. Video Monthly L.P.*, No. CIV.A.H-05-3951, 2006 WL 6584608, at *2 (S.D. Tex. Jan. 26, 2006); *Michaelis v. Deluxe Fin. Servs., Inc.*, No. CIV.A. 05-2351-KHV, 2006 WL 27210, at *2 (D. Kan. Jan. 5, 2006).

[4] The Sixth Circuit has held that back pay and front pay are equitable remedies. *Schwartz v. Gregori*, 45 F.3d 1017, 1022 (6th Cir. 1995). The Second Circuit has held that back pay is an equitable remedy. *Sandberg v. KPMG Peat Marwick*, 111 F.3d 331, 336 (2d Cir. 1997). The Tenth Circuit has held that back pay is a legal remedy, but may be considered equitable if intertwined with or incidental to reinstatement. *Millsap v. McDonnell Douglas Corp.*, 368 F.3d 1246, 1255 (10th Cir. 2004). The Third Circuit has held that prejudgment interest is an equitable remedy. *Skretvedt v. E.I. DuPont De Nemours*, 372 F.3d 193, 209 (3d Cir. 2004). Several district courts have also held back pay and front pay may be equitable remedies. *Janda v. Video Monthly L.P.*, No. CIV.A.H-05-3951, 2006 WL 6584608, at *2 (S.D. Tex. Jan. 26, 2006) (citing cases).

COBRA by not giving Mrs. Culver timely notice of her right to elect; and third, that Defendants violated COBRA by not giving Mrs. Culver the opportunity to continue coverage.

COBRA requires that "the plan sponsor for each group health plan shall provide, in accordance with this part, that each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event is entitled, under the plan, to elect, within the election period, continuation coverage under the plan." 29 U.S.C. § 1161(a). A "qualified beneficiary" includes the spouse of a covered employee who is a beneficiary under a group health plan. *Id*. at 1167(3)(A)(i). A "qualifying event" includes the termination of the covered employee's employment other than by reason of such employee's gross misconduct. *Id*. § 1163(2). The election period begins when the qualifying event terminates coverage and lasts at least 60 days. *Id*. § 1165(a)(1). In the case of termination, the employer under a plan must notify the administrator "within 30 days of the date of the qualifying event," and the "administrator of the plan shall notify any qualified beneficiary of their rights" under COBRA "within 14 days of the date on which the administrator is notified." *Id*. § 1166(a)–(c).

Mr. Culver alleges he was terminated on September 20, 2015. He disputes that he was terminated for theft. First Am. Compl. ¶ 9. He claims he received a notice of his right to continue coverage under the medical insurance plan, elected to continue coverage, and provided UCC with premium payments for coverage. *Id*. ¶ 11. UCC allegedly failed to negotiate his payments and refused to accept another check for coverage. *Id*. He pleaded that his termination was a qualifying event, that he received notice of his COBRA rights from the administrator of the plan, that he timely elected continuing coverage, and that he was denied continuing coverage. Mr. Culver thus adequately alleges facts to support his claim that Defendants violated 29 U.S.C. § 1161(a).

Plaintiffs also allege sufficient facts to support Mrs. Culver's COBRA claims. The First Amended Complaint alleges she is the spouse of a covered employee under a group health plan, making her a qualified beneficiary. First Am. Compl. ¶¶ 1, 5. Plaintiffs allege Mr. Culver was terminated on September 20, 2015, thereby triggering Mrs. Culver's notice and election rights under § 1165(a)(1) and § 1166. Plaintiffs allege Defendants did not provide her timely notice of her right to elect under the plan and denied her the opportunity to continue coverage. *Id*. at 19–20. Therefore, Plaintiffs have sufficiently pleaded all three of their COBRA claims, and Defendants' Motion to Dismiss Plaintiffs' COBRA claims is **DENIED**.

### C. ADEA WAIVER CLAIM

Plaintiffs allege facts sufficient to state a claim that Mr. Culver's separation agreement violated the waiver provision of the ADEA. The ADEA states: "An individual may not waive any right or claim under this chapter unless the waiver is knowing and voluntary." 29 U.S.C. § 626(f)(1). A waiver is not voluntary unless "the individual is given a period of at least 21 days within which to consider the agreement." 29 U.S.C. § 626(f)(1)(F)(i). Mr. Culver alleges UCC did not provide him 21 days to consider the terms of the separation agreement, which included a release of Mr. Culver's ADEA claims. First Am. Compl. ¶ 10. Mr. Culver has sufficiently pleaded that the release clause in the separation agreement violated the waiver provision. Defendants' Motion to Dismiss Plaintiffs' ADEA waiver claim is thus **DENIED**.

Although Mr. Culver successfully alleges that the separation agreement improperly waived his right to bring an ADEA claim, it is unclear to the Court what ADEA claim Mr. Culver is making. Plaintiffs should replead within twenty-one days to describe any ADEA violation about which he is making claims against Defendants.

### D. DURESS CLAIM

Plaintiffs' First Amended Complaint does not allege facts sufficient to support an economic duress claim under Texas law. Mr. Culver alleges the release in his separation agreement with UCC is void and unenforceable because UCC pressured him to execute the agreement, and that UCC made false misrepresentations to induce him to execute it. Mr. Culver states he executed the agreement in response to such pressure, due to his high medical costs and fear that UCC would press criminal charges against him. First Am. Compl. ¶ 10.

A plaintiff is must satisfy four elements to state a claim of economic duress under Texas law: (1) a threat to do something that the threatening party has no legal right to do; (2) a fraudulent deception; (3) the threatened condition is imminent and destroys a person's free will without adequate means of protection; and (4) the claimant's financial distress was caused by the party accused of duress. *McCallum Highlands, Ltd. v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995) (citing *Simpson v. MBank Dallas, N.A.*, 724 S.W.2d 102 (Tex. App.—Dallas 1987, writ ref'd n.r.e.)); *see also Herndon v. First Nat. Bank of Tulia*, 802 S.W.2d 396, 400 (Tex. App.—Amarillo 1991, writ denied) (requiring an economic duress claim to be sufficiently plead).

Mr. Culver does not allege facts that support the first element of economic duress, because he does not allege that Defendants made any threats to him. The First Amended Complaint refers to negotiations between Mr. Culver and UCC, where Mr. Culver sought an agreement that UCC would not oppose his seeking unemployment benefits and would not assert theft charges against him, in exchange for which he would release his claims. First Am. Compl. ¶ 10. In the end, both parties appear to have gained some benefit from the settlement agreement. The mere fact that a person enters into a settlement agreement "with reluctance, or as

a result of the pressure of business circumstances, financial embarrassment, or economic necessity, does not, of itself, constitute business compulsion or economic duress invalidating the contract." *First Texas Sav. Ass'n of Dallas v. Dicker Ctr., Inc.*, 631 S.W.2d 179, 186 (Tex. App.—Tyler 1982, *no writ*).  For these reasons, Defendant's Motion to Dismiss Plaintiffs' duress claim is **GRANTED**.

### E.  SLANDER CLAIM

Plaintiffs' First Amended Complaint alleges facts sufficient to state a claim for slander per se.  In Texas, slander per se includes "imputation of a crime." *Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F.3d 1150, 1161 (5th Cir. 2006) (citing *Gray v. HEB Food Store No. 4*, 941 S.W.2d 327, 329 (Tex. App.—Corpus Christi 1997, writ denied)).  Mr. Culver alleges that in the presence of other persons, Joseph Tsai, in the course and scope of his employment with UCC, falsely accused Mr. Culver of committing theft, which is a crime under Section 31 of the Texas Penal Code.  First Am. Compl. ¶ 12.  Defendants' Motion to Dismiss Plaintiffs' slander claim is therefore **DENIED**.

### IV.   CONCLUSION

Because Plaintiffs allege facts sufficient to state a claim under ERISA, COBRA, and for an invalid ADEA waiver and for slander per se, but not for economic duress or otherwise under the ADEA, the Motion is **GRANTED IN PART** and **DENIED IN PART**.  The Court will permit Plaintiffs to amend and replead as to Mr. Culver's economic duress and any other ADEA claim within twenty-one days.

**SO ORDERED.**

October 24, 2016.

_____
**BARBARA M. G. LYNN**
**CHIEF JUDGE**